CITY OF SHARONVILLE, APPELLEE, *v.* AMERICAN EMPLOYERS INSURANCE
COMPANY; UNITED NATIONAL INSURANCE COMPANY ET AL.,
APPELLANTS; CRAMER ET AL., APPELLEES.

[Cite as *Sharonville v. Am. Employers Ins. Co.,*
**109 Ohio St.3d 186, 2006-Ohio-2180.**]

(No. 2004–1735—Submitted October 26, 2005—Decided May 17, 2006.)

LANZINGER, J.

{¶ 1} This case, involving the question of an insurer's duty to defend law-enforcement officers in a civil rights action, is accepted upon a discretionary appeal.

{¶ 2} A federal action was filed against the city of Sharonville, Ohio and three of its current or former police officers.[1] The officers were sued in their official capacity over an alleged ongoing conspiracy to cover up evidence relating to the

---

1. The action, case No. C–1–01–649, was filed in the United States District Court for the Southern District of Ohio, Western Division, and it is styled Patricia Kammeyer, James Wright, Jan Loraine Miller, and Sue Ranielle Baker v. City of Sharonville, James Cramer, William Nuss, Mike Schappa, and John Doe(s).

murders of Marie Wright Schuholz and Starla Burns on May 8, 1981. The third amended complaint alleges that James Cramer, William Nuss, Mike Schappa, and other unknown officers ("John Doe(s)") have destroyed evidence of a murder and conspired for over 20 years to cover up facts crucial to solving the murder. Four claims are asserted in the third federal amended complaint: a civil rights action under Section 1983, Title 42, U.S.Code, conspiracy under state law, spoliation of evidence, and intentional infliction of emotional distress.

{¶ 3} To obtain a defense in the federal suit, Sharonville and the named police officers filed a declaratory judgment action in the Hamilton County Court of Common Pleas against the various insurance companies that had provided coverage to the city from 1979 to 2002, alleging that the policies imposed a duty to defend. Each insurance company denied the allegations, and the trial court granted summary judgment to all insurers on the issues of defense and indemnity. Sharonville and the officers appealed.

{¶ 4} The Court of Appeals for Hamilton County affirmed in part and reversed in part. *Sharonville v. Am. Employers Ins. Co.*, 158 Ohio App.3d 576, 2004-Ohio-4664, 818 N.E.2d 295. Summary judgment was found to have been proper for the general liability insurers, as they had no duty to defend either the city or the police officers. Id. at ¶ 49. Nevertheless, the appellate court reversed and granted judgment in favor of Sharonville and against the law-enforcement liability insurers (appellants North East Insurance Company, United National Insurance Company, Folksamerica Reinsurance Company, Scottsdale Insurance Company, and Ohio Governmental Risk Management Plan). Id.

{¶ 5} This cause is now before the court on a discretionary appeal. We review the granting of summary judgment de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.

{¶ 6} An insurance policy is a contract whose interpretation is a matter of law. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. Contract terms are to be given their plain and ordinary meaning. *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 167–168, 24 O.O.3d 274, 436 N.E.2d 1347. If provisions are susceptible of more than one interpretation, they "will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus. Additionally, "an exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded." (Emphasis sic.) *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096.

## The Law–Enforcement Liability Policies

{¶ 7} The underlying federal complaint in this case alleges a conspiracy lasting over 20 years to cover up evidence of a murder. During that time, specifically

between September 16, 1979, and April 26, 2002, Sharonville had a succession of law-enforcement liability policies issued by five different insurance companies.[2] Those policies stated that coverage included the defense either of groundless, false, or fraudulent claims or of "any" suit and the defense of claims for personal injury and wrongful acts. "Personal injury" was defined in the policies either by specific reference to the civil rights provisions of Title 42 of the United States Code or in general terms, such as a "deprivation of any rights, privileges, or immunities secured by the Constitution and Laws of the United States of America, or the State, for which the named insured may be held liable." The insurers conceded that they all have a duty to defend a "personal injury" claim filed under Section 1983, Title 42, U.S.Code. The term "wrongful act" (which included personal injuries) covers a breach of duty that occurs within an officer's scope of employment.

### The Federal Complaint

{¶ 8} In the underlying federal action, the following four claims are alleged:

{¶ 9} "Defendant[s] City of Sharonville, Cramer, Nuss, Shappa [sic, Schappa], and Doe(s) have, under color of law, deprived plaintiffs of rights, privileges and immunities secured by the First and Fourteenth Amendment[s] to the United States Constitution, including but not limited to rights of access to courts, equal protection and to due process of law."

{¶ 10} "Defendants have engaged in a conspiracy that continues to this day to destroy evidence and cover-up the role of Albert J. Schuholz in the murder[s] of Marie Wright Schuholz and Starla Burns, and cover-up the role of defendant Cramer who aided Schuholz avoid prosecution, all thereby causing injury to the plaintiffs."

{¶ 11} "Defendants Cramer, Nuss, Schappa, and Doe(s) have willfully destroyed evidence related to the investigation of the death of Marie Schuholz thereby disrupting plaintiff's ability to pursue and present their claims in probate and in other litigation regarding her death."

{¶ 12} "Defendants Cramer, Nuss, Schappa, and Doe(s) have acted intentionally and with malice toward the plaintiffs causing severe emotional distress."

---

2. Sharonville was insured by law-enforcement liability policies by the following providers for the following time periods: appellant North East Insurance Company insured from September 16, 1979, through September 16, 1981; appellant United National Insurance Company insured from September 16, 1981, through September 16, 1984; Imperial Casualty & Indemnity Company (which has been succeeded by appellant Folksamerica Reinsurance Company) insured from April 26, 1984, through April 26, 1989; National Casualty Insurance Company (which has been succeeded by appellant Scottsdale Insurance Company) insured from April 26, 1989, through April 26, 1990; and appellant Ohio Government Risk Management Plan insured from April 26, 1990, through April 26, 2002.

## Duty to Defend

{¶ 13} An insurer's duty to defend is broader than and distinct from its duty to indemnify. *Socony–Vacuum Oil Co. v. Continental Cas. Co.* (1945), 144 Ohio St. 382, 29 O.O. 563, 59 N.E.2d 199, paragraph one of the syllabus; *W. Lyman Case & Co. v. Natl. City Corp.* (1996), 76 Ohio St.3d 345, 347, 667 N.E.2d 978. An insurer has an absolute duty to defend an action when the complaint contains an allegation in any one of its claims that could arguably be covered by the insurance policy, even in part and even if the allegations are groundless, false, or fraudulent. *Sanderson v. Ohio Edison Co.* (1994), 69 Ohio St.3d 582, 635 N.E.2d 19, at paragraph one of the syllabus. Once an insurer must defend one claim within a complaint, it must defend the insured on all the other claims within the complaint, even if they bear no relation to the insurance-policy coverage. *Preferred Mut. Ins. Co. v. Thompson* (1986), 23 Ohio St.3d 78, 80, 23 OBR 208, 491 N.E.2d 688. An insurer need not defend any action or any claims within the complaint when all the claims are clearly and indisputably outside of the contracted policy coverage. *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 113, 30 OBR 424, 507 N.E.2d 1118. The duty to defend is further heightened when the insurer expressly states that it will defend claims that are groundless, false, or fraudulent. See *Wedge Products, Inc. v. Hartford Equity Sales Co.* (1987), 31 Ohio St.3d 65, 67–68, 31 OBR 180, 509 N.E.2d 74; *Preferred Risk*, supra, at paragraph two of the syllabus. The duty to defend an action is not determined by the action's ultimate outcome or the insurer's ultimate liability. *Motorists Mut. Ins. Co. v. Trainor* (1973), 33 Ohio St.2d 41, 62 O.O.2d 402, 294 N.E.2d 874, at paragraph two of the syllabus.

{¶ 14} Appellant insurers argue that the federal complaint's allegations describe conduct by the police officers that was outside the scope of their employment (covering up two homicides) and that it is bad public policy to require an insurer to defend intentional acts that are potential crimes or frauds. The insurers also contend that the alleged actions of the Sharonville Police Department in covering up a crime, especially Detective Cramer's actions, cannot be considered activities of law enforcement and that statements made to the victims' families constituted a fraud. The insurers argue that these intentional acts are expressly excluded from coverage as "willful violation[s] of a penal statute or ordinance" or as acts of fraud characterized by "affirmative dishonesty or actual intent to deceive or defraud." [3]

---

3. Policies from North East, United National, and National Casualty contain this quoted language. Imperial Casualty does not exclude fraudulent acts from its policies. The Ohio Plan covering the years 2001 to 2002 excludes "deliberate violation of any federal, state, or local statute, ordinance, rule or regulation" and "dishonest or fraudulent act or omission, or any criminal or malicious act or omission, or any willful violation of law."

{¶ 15} Allegations of improper officer activity, with the exception of sexual assaults,[4] have been held to be within the scope of employment. See *McGhee v. Volusia Cty.* (Fla.1996), 679 So.2d 729 (genuine issue of fact existed as to whether officer acted within scope of employment when he grabbed a handcuffed arrestee by the throat and kicked him during booking); *Daigle v. Portsmouth* (1987), 129 N.H. 561, 534 A.2d 689 (officer found to be acting within scope of employment when he assaulted theft suspect, even though officer was off duty, as officer had 24–hour law-enforcement responsibility); *Brungardt v. Barton* (1984), 69 Or.App. 440, 685 P.2d 1021 (officer acted in scope of employment when he assaulted operator of motorcycle during traffic stop); *Cheatham v. New Orleans* (La.1979), 378 So.2d 369 (off-duty officer acted in scope of employment when he shot and killed unarmed civilian who intervened in altercation); *Titan Indemn. Co. v. Newton* (N.D.Ala.1999), 39 F.Supp.2d 1336, 1342–1343 (officer within scope of employment when he fabricated evidence). Thus, in cases in which the activity is arguably an outgrowth of a police officer's duties, such as in the arrest of a suspect, the investigation of a crime, or the handling of evidence, officers have been held to be acting within the scope of their employment.

{¶ 16} We hold that the issuer of a law-enforcement insurance policy has a duty to defend its insured against an action when the complaint contains an allegation of conduct that could arguably be considered covered by the policy.

{¶ 17} The appellee officers are sued in their *official* as well as their individual capacities, and the federal claim asserts a violation of Section 1983, Title 42, U.S.Code. This civil rights claim is the type of claim that the insurers have promised to defend and for which Sharonville has paid its premiums. Public policy does not dictate that exclusions concerning criminal activity or fraud should be enforced in this case, for the record does not show that the current or former police officers were ever charged with, let alone convicted of, a crime. The insurers promised to defend claims against the Sharonville Police Department and its officers that are based on personal injuries and wrongful acts—including allegations that are groundless, false, or fraudulent. Appellant insurers have a duty to defend appellees in the federal lawsuit.

---

4. Certainly, sexual assaults are not within the scope of employment of a law-enforcement officer, even when the assault could not have occurred "but for" the perpetrator's authority as an officer of the law to detain the victim or to enter her home. See *Young v. Great Am. Ins. Co. of New York* (2004), 359 N.C. 58, 602 S.E.2d 673, adopting Judge Hunter's dissent below in 162 N.C.App. 87, 92–93, 590 S.E.2d 4; *McLaren v. Imperial Cas. & Indemn. Co.* (N.D.Tex.1991), 767 F.Supp. 1364, 1371; *Rawling v. New Haven* (1988), 206 Conn. 100, 108, 537 A.2d 439. No one would suggest that nonconsensual sexual activity is part of a police officer's job.

Lost Insurance Policy

{¶ 18} North East Insurance Company ("North East") has refused to defend Sharonville for the year September 16, 1980, through September 16, 1981, because Sharonville has not been able to locate that particular insurance policy.

{¶ 19} "It is undisputed that one seeking to recover on an insurance policy generally has the burden of proving a loss and demonstrating coverage under the policy." *Inland Rivers Serv. Corp. v. Hartford Fire Ins. Co.* (1981), 66 Ohio St.2d 32, 34, 20 O.O.3d 20, 418 N.E.2d 1381. Thus, an insured seeking benefits must prove the existence of a policy covering the relevant period. 17 Russ & Segalla, Couch on Insurance (3d Ed.2003), Section 254:11. When the document of insurance has been lost or destroyed, the existence of coverage may be proved by evidence other than the policy itself when the loss or destruction was not occasioned by bad faith on the part of the proponent of the document. Evid.R. 1004. "The coverage provided by destroyed or lost policies can be proven through use of circumstantial evidence (i.e. payment records, renewal letters, miscellaneous correspondence, or prior claims files)." 14 Couch, supra, Section 208:30. We hold that when an insurance policy is missing, lost, or destroyed, its terms may be proved by secondary evidence, unless the record contains evidence that the policy was lost or destroyed in bad faith.

{¶ 20} The appellate court accurately determined that Sharonville presented sufficient evidence to establish the relevant contents of the missing insurance policy. The parties stipulated that North East did have a policy with Sharonville that covered the previous year, September 16, 1979, through September 16, 1980.[5] On an application for liability coverage filed by the Sharonville Police Department sometime in 1981, James Darland, the Sharonville Safety and Service Director, stated that the city's present insurer was North East and listed the policy (with its disputed number, GL56–20–665) as expiring on September 16, 1981. Darland's May 5, 2003 affidavit stated that in filling out that application, he got his information from the city's insurance files, that to the best of his recollection, the city was insured by North East from September 16, 1980, through September 16, 1981, and that the city was continuously insured by North East with law-enforcement liability insurance from September 16, 1979, through September 16, 1981.

{¶ 21} Additional evidence supported the existence of a North East policy covering the period in question. Sharonville produced several documents from an unrelated suit against the city of Sharonville and members of its police department involving an incident alleged to have occurred on November 23, 1980, within

---

5. On August 22, 2003, all of the appellant insurance companies, including North East, entered into stipulations in which they agreed to the authenticity of certain documents.

the coverage period of the lost policy. The suit alleged violations of Section 1983, Title 42, U.S.Code. In its attempt to prove that a North East law-enforcement liability policy existed during 1980–1981, Sharonville has produced the following documents from that suit: (1) a letter from North East, dated February 3, 1981, to the city of Sharonville, that expressly refers to Policy No. GL56–20–665 and admits that the policy entitled the city to defense and indemnity for the November 1980 incident, (2) a January 3, 1981 letter from attorney H. Louis Sirkin to North East, in which Sirkin inquires whether he should proceed to defend the suit, (3) a North East letter to Sharonville confirming that Sirkin had been retained, and (4) an answer filed on February 9 on behalf of the Sharonville defendants, signed by Sirkin.

{¶ 22} In short, there was sufficient evidence to show that North East policy number GL56–20–665 existed and nothing to show that it was lost due to bad faith. A law-enforcement liability policy insured appellants during the time in question, and that policy included the duty to defend a Section 1983 claim. Thus, the Court of Appeals for Hamilton County acted properly when it held that North East policy No. GL56–20–665 existed and that it provided coverage for Sharonville.

{¶ 23} We, therefore, hold that the appellate court correctly reversed the summary judgments for the law-enforcement liability insurers and granted summary judgment for appellees on the duty-to-defend issue. The judgment of the Court of Appeals for Hamilton County is affirmed.

Judgment affirmed.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

O'DONNELL, J., concurs in judgment only.

———————

Keating, Ritchie & Swick, Kevin L. Swick, and Thomas T. Keating, for appellees.

Dinsmore & Shohl, L.L.P., Alan H. Abes, and Susan M. Luken, for appellant Folksamerica Reinsurance Company.

Reminger & Reminger Co., L.P.A., Clifford C. Masch, and Holly M. Wilson, for appellant United National Insurance Company.

Shumaker, Loop & Kendrick, L.L.P., and Michael Sanderson, for appellant Ohio Government Risk Management Plan.

Subashi, Wildermuth & Ballato, Nicholas Subashi, and Brian Wildermuth, for appellant Scottsdale Insurance Company.

Kohnen & Patton, L.L.P., K. Roger Schoeni, and Kimberly A. Zamary, for appellant North East Insurance Company.

Byron & Byron Co., L.P.A., Barry M. Byron, and Stephen L. Byron; and David E. Cruikshank, urging affirmance for amicus curiae, Ohio Municipal Attorneys Association.